IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Applicant, | ) MISC. ACTION ) 1:18-mc-00088-CAB |
| v. | ) ) Judge Boyko |
| STERLING INFOSYSTEMS, INC. | ) ) |
| Respondent. | ) |

**EEOC'S REPLY MEMORANDUM IN SUPPORT OF APPLICATION
FOR AN ORDER TO SHOW CAUSE WHY AN
ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED**

As discussed in EEOC's moving brief, for a court to enforce an administrative subpoena, EEOC need only show: 1) that the subpoena is within the agency's authority; 2) that the agency has satisfied its own procedural (due process) requirements; and, 3) that the information sought is relevant to its investigation. *EEOC v. Shell Oil Company*, 466 U.S. 54, 72 n. 26 (1984). Respondent failed to comply fully with EEOC's subpoena. Respondent failed to show an exception to the exhaustion doctrine and waived objections to the subpoena. Even if Respondent had not waived the objections it attempts to raise, the subpoena must be enforced because each element of the Supreme Court's 3-part test in *Shell Oil* has been met. The Court should order Respondent to comply fully with the subpoena.

**I.     ARGUMENT**

**A.     Respondent Waived its Objections to the Subpoena.**

To preserve objections to an EEOC subpoena, the recipient must petition EEOC to revoke or modify the subpoena within five days of service of the subpoena. 29 U.S.C. § 161(1); 42 U.S.C. § 2000e-9; 29 C.F.R. § 1601.16(b)(1). There is no dispute that Respondent failed to file a timely

1

petition to revoke or modify the subpoena within the time mandated (no attempt was made until nearly two weeks after the expired deadline). Accordingly, Respondent waived its objections.

The weight of the authority on the waiver issue supports the seminal case, *EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1063-64 (5th Cir. 1979), holding that an employer is required to exhaust its administrative remedies before challenging judicial enforcement of an EEOC subpoena, and that failure to do so waives all objections except constitutional objections. *See EEOC v. Aerotek, Inc.*, 498 F. App'x 645, 648-49 (7th Cir. 2013) (unpub.) (Aerotek was foreclosed from challenging EEOC's subpoena because it did not submit a petition to revoke or modify the subpoena until six days after service of the subpoena, which is beyond the 5-day deadline); *see also*, *EEOC v. County of Hennepin*, 623 F. Supp. 29, 31-32 (D. Minn. 1985); *EEOC v. City of Milwaukee*, 919 F. Supp. 1247, 1255 (E.D. Wis. 1996); *EEOC v. Roadway Express, Inc.*, 569 F. Supp. 1526, 1528-29 (N.D. Ind. 1983); *EEOC v. Ohio Bureau of Employment Services*, No. C-2-81-1265, U.S. Dist., LEXIS 11886, at *3-5 (S.D. Oh. Feb. 3, 1982).

The cases Respondent cites for the proposition that it has not waived objections are not controlling and are distinguishable. Respondent relies on cases where "sufficiently extraordinary" or compelling circumstances warranted an exception to the rule, but there are no such circumstances here. Respondent relies primarily on *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 963-64 (D.C. Cir. 1999) ("Courts may exercise their traditional authority to hear issues not presented to the agency if the circumstances surrounding noncompliance with agency procedures are sufficiently compelling."), but that decision rested on extraordinary circumstances, none of which Respondent has established. Specifically, in *Lutheran*, while the court correctly acknowledged that "section 1601.16(b)(1)'s mandatory language creates a strong presumption that issues parties fail to present to the agency will not be heard in court," it also held that a purported

privilege objection was sufficiently extraordinary to rebut presumptive waiver. *Id.* at 964. Similarly, the court in *EEOC v. Bashas', Inc.*, 2009 WL 3241763 , at *8 (D. Ariz. Sept. 30, 2009) *order clarified sub nom. Equal Employment Opportunity, Comm'n v. Bashas', Inc.*, 2009 WL 5206632 (D. Ariz. Dec. 24, 2009), recognized an exception to waiver where an abuse of power or process exists. In *EEOC v. WinCo Foods, Inc.*, the court excused waiver where the subpoena did not notify the recipient of the 5-day rule, EEOC did not notify the recipient of any compliance issue or failure to exhaust, the recipient consistently objected, both orally and in writing to EEOC's information requests, and the objections were served on the date of production. *EEOC v. WinCo Foods, Inc.*, No. S-05-0486, 2006 U.S. Dist. LEXIS 64521, at *11-13 (E.D. Cal. Sep. 7, 2006).

Respondent has not established any circumstances that would support an exception to waiver, as described in the authority it cites. Respondent has not alleged that it was unaware of the 5-day requirement or that it was unrepresented during the 5-day period. To the contrary, Respondent states its counsel was hired two days after it received the subpoena, and the request for an extension of time indicates that Respondent knew there was a 5-day deadline. Respondent produces no evidence that it took steps to comply with the 5-day deadline; calling EEOC's office after it closed and attempting to leave a voice mail message is not sufficient to excuse its failure to meet the mandatory deadline. Respondent has raised no privilege issues, nor was there an abuse of process or any other facts to rebut the presumption that a failure to file timely objections results in waiver. There is no statutory or regulatory provision for such an extension request. Further, unlike the subpoena recipients in *Lutheran* and the other cases Respondent cites, Respondent made no effort to object to the subpoena during the 5-day period, such as serving them by facsimile, mail, hand-delivery, or email. Additionally, EEOC responded to Sterling's request for an extension in writing, expressly stating that the petition period already had expired and,

accordingly, that objections could no longer be submitted.  While EEOC granted Respondent additional time *to produce* the subpoenaed information, EEOC correctly advised Respondent that the 5-day period to file objections already had expired; therefore, Respondent's objections, if any, already had been waived.  Doc. #2-7, #21-2.

In *EEOC v. City of Long Branch*, the district court rejected the same defense, and the same authority, that Respondent raises and relies upon here.  There, the court found that the subpoena recipient did not adequately justify its noncompliance with the deadline, finding nothing in the record "that provides any explanation as to why Respondent did not exhaust its administrative remedy by filing a timely and proper petition to revoke. Hence, there is no evidence that the lack of explicit notice in the body of the subpoena caused Respondent's failure to exhaust." *EEOC v. City of Long Branch,* Civil Action No. 15-1081 (MAS) (TJB), 2018 U.S. Dist. LEXIS 105008, at *8-9 (D.N.J. June 22, 2018).  Here, Respondent also failed to produce such evidence.

Similarly, Respondent's reliance on *EEOC v. Service Tire Truck Centers*, 2018 WL 5043734 (M.D. Pa., 2018), another non-binding district court case, is misplaced. Respondent has not and cannot show it had no knowledge of statutory and regulatory compliance.  To the contrary, Respondent was well aware of the 5-day requirement.  Respondent failed to show that any aspect of the subpoena caused its failure to file timely objections.  *EEOC v. City of Long Branch,* 2018 U.S. Dist. LEXIS 105008, at *8-9.  Whether or not this proceeding is *de novo*, Respondent failed to show that it is entitled to a judicial release from waiver.

**B.     Respondent Has Not Complied with the Subpoena.**

Contrary to Respondent's contention, EEOC has objected to Respondent's production as insufficient; the latest comprehensive objection was sent by email on June 24, 2019.  Exh. 1 (6/24/2019 email, pp. 2-5).  This email was a follow-up to a teleconference on Friday, June 14,

4

2019, that EEOC held with Respondent counsel resulting from EEOC's written request that Respondent produce to EEOC the consumer reports and related documents that it claims to have produced to Alcoa and Arconic counsel on May 9, 2019. As Respondent knows, neither Alcoa nor Arconic has passed along to EEOC that purported production. Nevertheless, Respondent still has not produced those documents to EEOC. Respondent has not cured any of the deficiencies that EEOC identified on June 24, 2019, nor has it told EEOC that it will cure them. Respondent has not complied with the subpoena.

### 1. Subpoena Request Nos. 1-3

On June 24, 2019, EEOC informed Respondent that through Respondent's latest production to EEOC ending in Bates-stamped number STERLING 000958[1], the company may have complied with Subpoena Request Nos. 1-3, *but only if the following conditions had been met.* For Request No. 1, EEOC agreed the production may be complete so long as Respondent had "no further contracts or service agreements between Sterling and Alcoa or Arconic to produce from the beginning of the relationship in 2006 to the present." Exh. 1. Respondent never replied as to whether it had further contracts or agreements. Similarly, for Request No. 2, EEOC told Respondent that its production may be complete if there were no further "responsive documents reflecting how Sterling 'will assess, analyze, summarize, score, rate, report, or otherwise process…information' obtained on applicants or employees, and assuming there are no further documents including data that reflect communications between Sterling and Alcoa or Arconic concerning the information Sterling will obtain concerning Alcoa or Arconic applicants or employees." *Id.* Respondent never answered whether it has such documents. And, for Request

---

[1] There is a typographical error in the email indicating that the production ends in 000938, instead of 000958.

No. 3, EEOC told Respondent that its production may be considered complete "so long as there are no outstanding documents including data that reflect the process, standard, requirement, and criteria that have governed or applied to background check, or other information collection services, Sterling has provided or will provide to Alcoa/Arconic." *Id*. Again, Respondent failed to reply and never advised EEOC whether there are outstanding documents. Therefore, EEOC must assume that none of the conditions described above have been met (as Respondent was explicitly invited to confirm whether there are other responsive documents, but declined to answer), and that Respondent's production remains insufficient. *See* Exh. 1.

**2. Subpoena Request No. 4**

Respondent has not complied with Request No. 4. Respondent says that it provided to two third parties (Alcoa and Arconic) consumer reports and disclosure and authorization forms generated for and by those companies, but the subpoena requires Respondent to produce that material to EEOC, not to third parties (EEOC cannot confirm what Respondent's production to those third parties actually contained, as they have not produced that material to EEOC and neither has Respondent). *See* Exh. 2 (Composite Exhibit of emails between EEOC and Alcoa and EEOC and Arconic). Given that Respondent purportedly located all documents that are responsive to Request No. 4, and produced them to third parties, it should not oppose producing them to EEOC, particularly considering that Respondent waived all objections. Whatever production Respondent made to third parties cannot be a substitute for compliance with a subpoena issued by a law enforcement agency. Respondent's production of responsive material to third parties, and its simultaneous refusal to produce the same material to EEOC, has unnecessarily multiplied and delayed these proceedings, and has deprived EEOC of critical material that Respondent must admit is responsive, has been gathered and is ready for production to EEOC, and concerning which

Respondent waived all objections. Although Respondent knows that Alcoa and Arconic refuse to produce to EEOC the same documents that Respondent gave them on May 9, 2019, and which Respondent admits are responsive to EEOC's subpoena, Respondent continues to withhold production of these documents. *See* Exh. 1. As noted above, EEOC cannot even confirm what material Respondent produced to Alcoa and Arconic, which leaves the Commission unable to determine whether that material, even if EEOC could obtain it from third parties, is the universe of documents sought in Request No. 4. Even if Respondent could comply with an EEOC subpoena by producing material to a third party, which it cannot, there is no record evidence here that would entitle it to judicial release from EEOC's subpoena.

Moreover, EEOC repeatedly has agreed to entry of a court order concerning production of material responsive to Request No. 4, to satisfy Respondent's stated concern that the Fair Credit Reporting Act (FCRA) requires entry of such an order. EEOC remains willing to stipulate to entry of such an order, but Respondent has refused the offer unless EEOC agrees to resolve all of the parties' other disputes concerning the subpoena. Respondent's position is unreasonable and indefensible – Respondent improperly holds hostage records that it could produce to EEOC readily and without further delay, merely because the company hopes that by continuing to withhold that production it can force EEOC to excuse it from its obligation to produce material in response to other portions of the subpoena. That is not a valid basis to continue withholding production, and the Court should not tolerate such tactics. During the parties' June 14th conference, Respondent admitted that by producing responsive material to third parties it could no longer assert any undue burden objection or defense, yet Respondent still refuses to produce the material at issue.

    **3. Subpoena Request Nos. 5, 6, 7, 10, and 14.**

Respondent has not satisfied its obligations to Request Nos. 5-7, 10, and 14. EEOC

informed Respondent that its May 9th production to Arconic and Alcoa is unlikely to satisfy the documents including data requested in those requests – *particularly given that EEOC has not seen what was produced to those third parties*. Request No. 5 concerns all documents and data regarding any Alcoa or Arconic applicant that Sterling "has accessed, obtained, collected, or relied upon *from any source*." Emphasis added. As stated, this requires production of such material from any source, *not just the consumer reports*. Request No. 10 requires production of all documents and data that reflect or purport to reflect the race, gender, or national origin of any Alcoa or Arconic applicant or employee, *regardless of source*. Again, even if Respondent did produce to Alcoa and Arconic consumer reports that contain responsive material (and assuming that such production is sufficient to satisfy its subpoena obligations, which it is not), EEOC requested responsive information from any source – and not merely responsive information that may be culled from consumer reports, assuming that it could even be found in those reports.

Request Nos. 6 and 7 require producing documents and data that Alcoa and Arconic have produced to Respondent regarding any Alcoa or Arconic applicant or employee and reciprocally any documents and data on any Alcoa or Arconic applicant or employee that Respondent has produced to Alcoa or Arconic. As discussed, EEOC cannot confirm what Respondent's production to the third parties actually contained, as they have not produced that material to EEOC and neither has Respondent). Moreover, Respondent has not conducted electronic searches, so it is likely that there are responsive data resulting from electronic searches that Respondent still must produce.

**4. Subpoena Request Nos. 8 and 9**

EEOC has fully cooperated with Respondent in an attempt to resolve the parties' disputes – Respondent's suggestions to the contrary are false. EEOC repeatedly reminded Respondent that it must choose appropriate search methods and identify custodians who are most likely to have

8

relevant information.  After negotiations, which included EEOC's offer to limit the temporal scope to the period from July 1, 2012, to the present, and after reminding Respondent that communications include more than just emails, EEOC agreed to Respondent's proposal to search for responsive documents and data reflecting any communications between Respondent and any Alcoa or Arconic applicant or employee (Request No. 8) and documents and data reflecting any communications between Respondent and Alcoa or Arconic regarding any Alcoa or Arconic applicant or employee or any aspect of services performed, or to be performed, for Alcoa or Arconic by Respondent (Request No. 9) as reflected in Doc. #21-8 and #21-9.

### 5. Request Nos. 11 and 12

As noted above, EEOC has not seen the material that Respondent purportedly produced to Alcoa and Arconic, and which Respondent claims is the same material sought in Request Nos. 11 and 12.  Even if Respondent could comply with EEOC's subpoena by producing material to a third party, which it cannot, there is no record evidence of what it produced.  EEOC's Request No. 11 seeks all consent forms, waivers, releases, or other documents authorizing consumer reports for employment purposes, reflecting consent of any Alcoa or Arconic applicant or employee to any kind of background report or authorizing Sterling or Alcoa or Arconic to procure a consumer report for employment purposes.  Similarly, Request No. 12 seeks disclosures made by Respondent or Alcoa or Arconic to any Alcoa or Arconic applicant or employee that a consumer report may be obtained for employment purposes.  The Court should order Respondent to comply fully with the subpoena by producing all responsive material to EEOC.

### 6. Request No. 14

Request No. 14 requires Respondent to produce an electronic database, as defined by EEOC, identifying all Alcoa and Arconic applicants and employees for which Respondent

prepared any background check from January 1, 2009, to the present and containing additional information such as name and date of birth, race, gender, national origin, position applied for or offered, employment status, date authorized to begin performing work, type of background check ordered and results of each background check, date ordered, date each check was conducted, date each check was completed, jurisdiction applying to each check, as well as information on any criminal record revealed. Respondent has not produced such a database. It has produced only a 355-page PDF of a spreadsheet containing the fields named BgOrderID, DateCreated, and Gender. Doc. #2-8 (excerpt from this 355-page PDF). These three fields do not come close to the information sought in Request No. 14, including all subparts, much of which Respondent appears to have readily available. For example, in Respondent's Answer it details a process whereby Alcoa, Arconic, or the applicant or employee accesses Sterling's "system" or Respondent sends applicants and employees "links" to its system to input information and then consumer reports are sent to Alcoa or Arconic. In addition, Respondent has not disputed EEOC's understanding that orders for consumer reports are processed via Screening Direct ticketing entry into Respondent's system and that the results also are accessed through Screening Direct. Exh. 1. Accordingly, it appears that Respondent has data readily available that would satisfy substantial portions of Request No. 14, as well as potentially some other Requests. Nevertheless, Respondent has not produced these data to EEOC.

     Request No. 14 sought production of material beyond consumer reports, disclosures, and authorizations, of the type that Respondent claims to have given Alcoa and Arconic. Respondent refused EEOC's requests for blank or anonymized copies of the consumer reports so that the Commission could familiarize itself with the data likely to be obtained from such reports. Doc. #21-12. In order for information to be useful, EEOC must be able to link data to other data and

documents. Although EEOC has not seen the consumer reports, Respondent claims BgID is unique to every report and appears in every report. However, in the one example of a Background report Respondent uses that EEOC has obtained – which is that of Charging Party – a BgID does not appear. If other reports are similar, a BgID would be virtually useless as a unique linking variable between documents and data. Accordingly, production of reports or similar documents alone, without the requested data, is not sufficient to comply with EEOC's subpoena.

**C.  Demographic Data and Other Data from Any Source are Relevant and it is Not Unduly Burdensome to Produce Them.**

Respondent has access to sources of information about Alcoa and Arconic applicants and employees *beyond that contained in consumer reports and disclosure and authorization forms*. Respondent is well aware that the subpoena requires production of responsive information that exists outside the four corners of consumer reports. Nevertheless, Respondent continues to withhold from EEOC not only the consumer reports, but also responsive data *found in other sources*. *See* Doc. #21-11 and #21-12; Exh. 1.

During its discussions with EEOC, Respondent has not denied that it has demographic data that are responsive to EEOC's subpoena. Further, in Respondent's Answer brief, it does not deny having responsive demographic data about the applicants and employees at issue. Respondent's only argument against production is that it is unduly burdensome to look for and collect demographic data.[2]

Moreover, Respondent likely obtains demographic data in the ordinary course of its

---

[2]  Although EEOC need not show that it tried to obtain from another source the information it seeks from Respondent, EEOC did ask the employer to produce some of the information sought before serving the subpoena at issue, including in three requests for information dated January 13, 2015, June 10, 2015, and April 18, 2016. Exh. 3. The employer did not produce the information sought. Moreover, the demographic and other responsive data Respondent collects, as a consequence of its FCRA obligations and because it has access to vast sources of such information, are likely to be greater in scope and detail than employer-retained data.

11

business and, therefore, it should not be unduly burdensome for Respondent to collect and produce it to EEOC. It appears that Respondent collects and maintains demographic data, at least in part, to match the identities of persons to criminal histories it obtains, such as whether the record actually belongs to an applicant (such as, for example, whether the applicant had been correctly identified or not by relevant demographics, including, but not limited to, name, race or ethnicity, and gender). As a consumer reporting agency, Respondent is subject to certain restrictions and obligations under FCRA. Under 15 U.S.C. § 1681e(b), for example, FCRA mandates that consumer reporting agencies "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *See Smith v. LexisNexis Screening Solutions, Inc.*, 837 F.3d 604, 610 (6th Cir. 2016) (holding LexisNexis failed to follow reasonable procedures to protect plaintiff's information by failing to search using plaintiff's middle name to distinguish plaintiff from another person with the same first and last name as plaintiff, which would have avoided obtaining the wrong criminal background report erroneously showing plaintiff had criminal history which cost plaintiff a job). The standard for determining whether a consumer reporting agency uses adequate procedures is what a "reasonably prudent person" would do under the circumstances.[3]  See, *Turner v. Experian Information Solutions, Inc.*, 2017 WL 2832738, at *4 (N.D. Ohio, 2017) (citations omitted). *See also*, 15 USC

---

[3]  In *Kevin A. Jones v. Sterling Infosystems, Inc.*, 14-CV-3076, Complaint (S.D.N.Y. 5/1/2014), the plaintiff alleged that Respondent violated 1681(e)(b), in part, because it failed to take reasonable procedures to assure the maximum possible accuracy of information about him in its background report; the plaintiff allegedly lost a job opportunity as a result. *Id*. ¶¶ 20-24. Respondent had incorrectly reported that plaintiff Jones, who is black, had four criminal records, which actually belonged to another Kevin Jones. *Id*. The Kevin Jones whose criminal records Respondent allegedly obtained is white, according to some record evidence in the case. *Id*. Obtaining accurate demographic information about the targets of their criminal background searches is one way for Respondent to test the accuracy of criminal history information, and guard against the errors alleged in *Jones*.

§ 1681k. Considering how often Respondent must obtain demographic information for such purposes, it should not be burdensome for the company to collect it and produce it to EEOC.

Under 15 USC § 1681g, FCRA requires the consumer reporting agency, upon request by the consumer, to give the consumer all information in the consumer's file, including the sources of the information. If a consumer disputes the accuracy of a consumer report, there are records that the consumer reporting agency has to maintain concerning the information used to investigate and resolve the dispute under 15 USC § 1681l. Indeed, Respondent admits to collecting and maintaining communications related to a specific dispute by a consumer in addition to what information it collects in the consumer reports or from Arconic or Alcoa to initiate the process or the applicant or employee herself/himself. Answer; Doc. #21-10. (Nager Decl.), ¶ 13. Further, the agreements Respondent has produced with Arconic and Alcoa allow Respondent to contact an employer's applicants directly to obtain more information from them. Again, the collection and maintenance of demographic data, and gathering data about applicants beyond that reflected in consumer reports, appears to be an essential part of Respondent's business function and it should not be unduly burdensome for the company to produce that information to EEOC.

Respondent has not demonstrated that compliance would seriously affect the company's normal operating costs and unduly disrupt or hinder normal business operations. *See EEOC v. Roadway Express, Inc.,* 75 F.Supp.2d. 767, 772 (N.D. Ohio 1999) (citing *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir. 1986)). As discussed in greater detail in EEOC's moving brief, Respondent must establish the estimated time to compile and cost to compile in light of its normal operating costs or that compliance would seriously disrupt its business.

Respondent is a highly sophisticated vendor of employment background reports. It claims to be the largest such company in the U.S. Respondent uses automated systems to search the

13

majority of court records, including with its proprietary software, CourtDirect, which automatically searches over 2,300 U.S. jurisdictions and provides instant access to most U.S. criminal records. With its "cutting-edge, proprietary artificial intelligence (AI) technology called Smart Data, we associate only relevant criminal information from courts in an automated way and then apply hiring criteria based on your business needs." https://www.sterlingcheck.com/services/criminal-background-checks/. With such built-in automated search capabilities, it seems Respondent would not incur undue expense in producing responsive information.

Respondent relies on authority that is not controlling and readily distinguishable. The burdensome finding in *EEOC v. Forge Indus. Staffing Inc.*, 2014 WL 6673574, at *3 (S.D. Ind., 2014) was based on evidence of a manual review to be conducted of thousands of applications, in a small department, that would take over 2,000 hours and disrupt the functioning of the unit. There is no evidence that Respondent would conduct a manual review. Indeed, Respondent specifically suggested that it intends to perform electronic searches. In *EEOC v. Wal-Mart Stores East, LP*, 2016 WL 1242540, at *6 (E.D.Ky., 2016), the Fourth Circuit found EEOC's subpoena request burdensome because Wal-Mart already had conceded that the test in question had a disparate impact on women, rendering the subpoena unnecessary. Therefore, a nationwide data collection estimated to cost $105,000 and utilize around 2,000 person hours was unduly burdensome. There is no similar record evidence here. Additionally, in *EEOC v. St. John Hosp. & Medical Center*, 2012 WL 3887626, at *8 (E.D.Mich.,2012), the court modified the subpoena by reducing its temporal scope to two years – the court did not refuse to enforce the subpoena.

Respondent estimates the cost of what it calls a "full file" disclosure, but that is speculative and insufficient to excuse it from subpoena compliance. *See EEOC v. Quad/Graphics, Inc.*, 63

14

F.3d 642, 648–49 (7th Cir. 1995) (Respondent's grossly inflated time and cost estimates were insufficient to establish undue burden). Moreover, EEOC is receptive to discussing options such as sampling, test runs, and similar cost-cutting measures, to help determine the best and most economical approach to collecting and producing the requested information. However, the Commission's entitlement to responsive information must be resolved before the parties can productively confer about such matters.

**D.      Request No. 13 is not irrelevant**

Respondent refuses to produce any documents to satisfy Request No. 13 on relevance grounds. The Request seeks relevant information. How Respondent determines the accuracy and reliability of the data and other information it has relied upon is relevant. Such information would include, at a minimum, any validation studies, reliability studies, documents, and data reflecting how accuracy is calculated. That information may relate to an employer's potential defense that a background check policy is job related and consistent with business necessity, as set forth in 42 U.S.C. § 2000e-2(k)(1)(A). For example, if background check reports used to exclude applicants from employment are not accurate and reliable, then an employer cannot credibly assert they are defensible. Information about the accuracy and reliability of Respondent's sources, and therefore the credibility of their criminal history reports, may cast light on potential defenses and related issues.

Finally, Respondent asserts the need for a protective order. Respondent must establish the need for such an order, but it has failed to do so. *Nix v. Sword,* 11 Fed.Appx. 498, 500 (6th Cir. 2001), *citing General Dynamics Corp. v. Selb Mfg.* Co., 481 F.2d 1204, 1212 (8th Cir. 1973). While EEOC may agree to entry of an appropriate protective order, its entitlement to information should be resolved before the parties can productively discuss the terms of such an order.

DATED: August 21, 2019	Respectfully submitted,

                                                                 s/Melanie M. Peterson
                                                                 Melanie M. Peterson
                                                                 Senior Trial Attorney
                                                                 melanie.peterson@eeoc.gov
                                                                 (267) 589-9759

                                                                U.S. EQUAL EMPLOYMENT OPPORTUNITY
                                                                COMMISSION
                                                                Philadelphia District Office
                                                                801 Market Street, Suite 1300
                                                                Philadelphia, PA 19107
                                                                215) 440-2848 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of August, 2019, I electronically filed the foregoing **EEOC'S REPLY MEMORANDUM IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE WHY AN ADMINISTRATIVE SUBPOENA SHOULD NOT BE ENFORCED** with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*Melanie M. Peterson*